UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JEFFREY H. ALLEN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>UTILIQUEST, LLC, and DOES 1 through 100, INCLUSIVE,<br><br>    Defendant(s). | Case No:  C 13-00049  SBA<br><br>**ORDER GRANTING MOTION TO REMAND AND DENYING MOTION FOR A MORE DEFINITE STATEMENT**<br><br>Docket 8, 15 |

   Plaintiff Jeffrey Allen ("Plaintiff") commenced the instant putative wage and hour class action against Defendant Utiliquest, LLC ("Defendant") in the Superior Court of California, County of San Francisco.  Compl., Dkt. 1.  The action was removed to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Notice of Removal, Dkt. 1.  The parties are presently before the Court on Plaintiff's motion to remand, and Defendant's motion for a more definite statement.  Dkt. 8, 15.  Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS Plaintiff's motion to remand, and DENIES Defendant's motion for a more definite statement as MOOT, for the reasons stated below.  The Court, in its discretion, finds these matters suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.  **BACKGROUND**

   Defendant is a limited liability company existing under the laws of Georgia with its principal place of business in Georgia.  Vocke Decl. ¶¶ 2-3, Dkt. 4.  Plaintiff is a former employee of Defendant.  Id. ¶ 6.  He brings the instant action "on behalf of a class of

persons in the employ of Defendant in California as system specialists in the four years preceding the filing date of this lawsuit and the present ('the Class')."  First Am. Compl. ("FAC") ¶ 7.  The FAC alleges that Defendant failed to pay employees regular and overtime pay in violation of California Labor Code §§ 510 and 1194, and applicable Industrial Welfare Commission Orders; failed to pay its employees earned wages in violation of California Labor Code §§ 201-204; failed to issue wage instruments in conformity with California Labor Code § 212; and failed to provide accurate wage statements to employees as required by California Labor Code § 226.  Id. ¶¶ 1, 10.

Plaintiff alleges three claims for relief: (1) failure to pay overtime wages; (2) violation of California Business & Professions Code § 17200, et seq. (the "UCL"); (3) violation of the Private Attorneys General Act ("PAGA"), California Labor Code § 2698, et seq.  See FAC.  By this action, Plaintiff seeks compensatory damages, statutory damages, penalties, restitution, PAGA penalties, interest, attorneys' fees, and costs.  Id. at 8.

## II.   LEGAL STANDARD

### A.   Remand

A motion for remand is the proper procedure for challenging removal.  Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure.  See 28 U.S.C. § 1447(c).  A district court must remand a case to state court "if at any time before the final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "[R]emoval statutes are strictly construed against removal."  Luther v. Countrywide Home Loans Servicing, LP, 533 F.3d 1031, 1034 (9th Cir. 2008).  "The presumption against removal means that the defendant always has the burden of establishing that removal is proper."  Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009).  As such, any doubts regarding the propriety of the removal favor remanding a case. See Gaus, 980 F.2d at 566.

///

///

**B.      Jurisdiction Under CAFA**

Under CAFA, district courts have original jurisdiction in any civil action where: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the aggregate number of proposed plaintiffs is 100 or greater; and (3) any member of the plaintiff class is a citizen of a State different from any defendant.  28 U.S.C. § 1332(d)(2); see also Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 997 (9th Cir. 2007).  CAFA also provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000."  Id. § 1332(d)(6).  "Class members" include "persons (named or unnamed) who fall within the definition of the proposed or certified class."  Id. § 1332(d)(1)(D).  The burden of establishing removal jurisdiction under CAFA lies with the proponent of federal jurisdiction.  Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006).

Where, as here,[1] a plaintiff alleges that the amount in controversy in an action is less than the jurisdictional minimum of $5,000,000, the Ninth Circuit requires the defendant to demonstrate with "legal certainty" that the amount in controversy is more than $5,000,000.  Lowdermilk, 479 F.3d at 999.  The "legal certainty" standard establishes that a defendant must provide sufficient "concrete evidence . . . to estimate" the actual amount in controversy.  Id. at 1001.  The "legal certainty" standard sets a "high bar for the party seeking removal, but it is not insurmountable."  Id. at 1000.

A court "cannot base [its] jurisdiction on [a] Defendant's speculation and conjecture."  Lowdermilk, 479 F.3d at 1002.  Nor can removal be based simply upon conclusory allegations.  Abrego, 443 F.3d at 689.  Rather, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum.  Id.; Gaus, 980 F.2d at 567.  In determining whether the amount in controversy exceeds the statutory minimum of $5,000,000, courts are permitted to consider

---

[1] Plaintiff alleges that "the damages, back wages, restitution, penalties, interest and attorneys' fees incurred and sought do not exceed an aggregate value of $4,999,999.99 and that Plaintiff's individual claims do not exceed $74,999.00."  See Compl. ¶ 13; id. at 8.

1  facts in the removal petition and "summary-judgment-type evidence relevant to the amount

2  in controversy at the time of removal," such as affidavits or declarations.  See Valdez v.

3  Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004).  If the defendant is unable to

4  demonstrate with "legal certainty" that the amount in controversy has been met, the case

5  must be remanded back to state court.  See 28 U.S.C. § 1447(c).

6  **III.**   **DISCUSSION**

7        Plaintiff moves to remand the instant action for lack of subject matter jurisdiction on

8  the ground that Defendant has failed to demonstrate with "legal certainty" that the amount

9  in controversy exceeds $5,000,000.  Pl.'s Mtn. at 4-11.  Id.  In response, Defendant

10 contends that subject matter jurisdiction exists because it has "provided competent and

11 irrefutable evidence that the amount in controversy exceeds $5,000,000 based on the facts

12 regarding the putative class and the allegations in [the FAC]."  Def.'s Opp. at 1; see Notice

13 of Removal ¶¶ 14-27.  According to Defendant, the amount in controversy is approximately

14 $8,742,056.  Notice of Removal ¶ 27.  In calculating the amount in controversy, Defendant

15 relies on the allegations in the FAC and the declaration of Neil Vocke, a Senior Human

16 Resources Manager employed by Defendant.  See Vocke Decl.

17       **A.**   **Bad Faith**

18       As an initial matter, while Defendant asserts that the information provided in its

19 Notice of Removal "meets the legal certainty requirement," Notice of Removal ¶ 16,

20 Defendant contends that it must only show by a preponderance of the evidence that the

21 amount in controversy exceeds $5,000,000 because Plaintiff's allegations regarding the

22 amount in controversy are made in bad faith.  Def.'s Opp. at 2.  Specifically, Defendant

23 argues that Plaintiff has acted in bad faith because "even a minimal amount of research"

24 would have made it clear that the potential class size "far exceeds 99 individuals" as alleged

25 in the FAC.[2]  Id.

26

27 ───────────────

28     [2] The FAC alleges that the class is more than 50 individuals but less than 100.  FAC ¶ 8.

It is well established that the plaintiff is the master of his complaint and can plead to avoid federal jurisdiction. Lowdermilk, 479 F.3d at 998-999.  Accordingly, subject to a "good faith" requirement in pleading, a plaintiff may sue for less than the amount he may be entitled to if he wishes to avoid federal jurisdiction and remain in state court.  Id. at 999.

In the CAFA context, pleading damages below the jurisdictional amount despite the knowledge that the claims are actually worth more constitutes "bad faith."  See Lowdermilk, 479 F.3d at 1002-1003.  However, in order to prove bad faith in a pleading, the defendant must prove that the plaintiff is actually seeking more than $5,000,000 in damages, which essentially collapses the bad faith and amount in controversy inquiries.  Id. at 999 (citing Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006) ("[g]ood faith in [the CAFA] context is entwined with the legal certainty test, so that a defendant will be able to remove the case to federal court by showing to a legal certainty that the amount in controversy exceeds the statutory minimum")); see also Bonnel v. Best Buy Stores, L.P., 881 F.Supp.2d 1164, 1169 (N.D. Cal. 2012).  Accordingly, because a showing of bad faith requires Defendant to prove that damages exceed $5,000,000 notwithstanding Plaintiff's allegations to the contrary, the Court will apply the legal certainty standard in determining whether the amount in controversy exceeds the statutory minimum of $5,000,000.  Bonnel, 881 F.Supp.2d at 1170; see also Deaver v. BBVA Compass Consulting and Benefits, Inc., --- F.Supp.2d ----, 2013 WL 2156280, at *6 (N.D. Cal. 2013).

To the extent Defendant argues that the preponderance of the evidence standard applies because Plaintiff's refusal to stipulate that he will not seek more than $5,000,000 in damages demonstrates bad faith, the Court disagrees.  Defendant has not cited any decisional authority that supports its position.  Furthermore, the failure to enter into such a stipulation does not demonstrate bad faith because a class action Plaintiff cannot enter into a stipulation that binds absent class members to avoid federal jurisdiction.  See In Standard Fire Ins. Co. v. Knowles, ––– U.S. ––––, 133 S.Ct. 1345, 1348 (2013) ("Because his precertification stipulation does not bind anyone but himself, [Plaintiff] has not reduced the value of the putative class members' claims.").  The Supreme Court has recently explained

1  that while federal courts permit individual plaintiffs to avoid removal to federal court and to

2  obtain a remand to state court by stipulating to amounts at issue that fall below the federal

3  jurisdictional requirement, a plaintiff who files a proposed class action cannot legally bind

4  members of the proposed class before the class is certified by entering into such a

5  stipulation.  Id. at 1349-1350.

6      **B.    Overtime Wages**

7      Plaintiff seeks damages for Defendant's failure to pay overtime wages pursuant to

8  California Labor Code § 1194.  See FAC ¶¶ 16-17.  Section 1194 provides that "any

9  employee receiving less than the legal minimum wage or the legal overtime compensation

10 applicable to the employee is entitled to recover in a civil action the unpaid balance of the

11 full amount of this minimum wage or overtime compensation, including interest thereon,

12 reasonable attorney's fees, and costs of suit."  Cal. Lab. Code § 1194.

13     Defendant contends that the amount in controversy with respect to this claim is

14 $1,225,305.  Notice of Removal ¶ 20.  In reaching this figure, Defendant asserts that

15 approximately 555 non-exempt employees were employed in California by Defendant as

16 "Locators/Damage Prevention Specialists"[3] within the state of California during the class

17 period, and that the 555 employees worked "approximately 54,458 workweeks" during the

18 class period.  See Vocke Decl. ¶ 8.  Defendant also asserts that the average rate of pay for

19 the 555 putative class members is $15.69 per hour, and that Plaintiff's final rate of pay was

20 $15.00 per hour.  Id. ¶¶ 6, 9.  Based on these assertions, Defendant concludes that,

21 "[a]ssuming that [Defendant] did not pay Plaintiff and all putative class members for one

22

23

---

24     [3] Plaintiff seeks to represent a putative class consisting of all "persons in the employ of Defendant in California as *system specialists* in the four years preceding the filing of this lawsuit and the present ('the Class')."  FAC ¶ 7 (emphasis added).  According to Defendant,

25 Plaintiff held the "formal job title of 'Locator/Damage Prevention Specialist'" ("Locator").  Vocke Decl. ¶ 6.  Defendant calculated the class size based on the number of Locators

26 employed within the class period.  Id.  Plaintiff, for his part, does not dispute that he held the formal job title of Locator while he was employed by Defendant.  Nor does he dispute

27 that he seeks to represent a class consisting of persons employed by Defendant in California as Locators.  As such, the Court will assume for the purposes of the instant motion that

28 Plaintiff seeks to represent a class comprised of Locators.

overtime hour per week," the amount in controversy for this claim is $1,225,305 (54,458 x $15.00 x 1.5 = $1,225,305).  Notice of Removal ¶ 20.

The Court cannot credit Defendant's damages calculation.  Defendant's assumption as to the number of overtime hours worked by putative class members has no basis in either the plain language of the FAC or in any "summary-judgment-type" evidence.  There are no allegations in the FAC supporting Defendant's assumption that putative class members incurred one hour of overtime for each of the 54,458 workweeks in the class period. Plaintiff alleges that "Defendant *periodically* required Plaintiff and Class Members to work in excess of 8 hours per day and 40 hours per week."  FAC ¶ 16 (emphasis added).  While Plaintiff alleges that certain putative class members worked an unspecified amount of overtime, he does not allege facts providing a basis to assume that one hour of overtime was worked by putative class members during each of the workweeks in the class period. Nor has Defendant proffered any concrete "summary-judgment-type" evidence to support this assumption.   The absence of concrete evidence leaves the Court to speculate about the amount in controversy.  Thus, Defendant has failed to carry its burden to establish to a legal certainty that the amount in controversy with respect to Plaintiff's claim for unpaid overtime wages is $1,225,305.

**C.    UCL Claim**

Plaintiff alleges that Defendant violated the UCL by engaging in unlawful business acts or practices.  FAC ¶ 21.  Specifically, Plaintiff alleges that Defendant failed to correctly calculate and pay wages for regular and overtime hours worked, failed to issue wage statements in conformity with California law, and failed to provide accurate and timely wage statements in violation of various California laws and Industrial Welfare Commission Wage Orders.  Id.

///

///

///

///

## 1.      Missed Meal Breaks

Plaintiff seeks restitution[4] under the UCL for Defendant's failure to provide meal breaks in violation of California Labor Code § 226.7.  See FAC ¶¶ 21, 27.  Section 226.7 provides that "[i]f an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  Cal. Lab. Code § 226.7.

Defendant contends that the amount in controversy with respect to this claim is $816,870.  Notice of Removal ¶ 19.  In arriving at this figure, Defendant asserts that the putative class members worked a total of 54,458 workweeks within the class period, and that Plaintiff's final rate of pay was $15.00.[5]  Id.  Defendant then assumes that there was one missed meal break for each of the 54,458 workweeks within the class period.  Id. Based on this assumption, Defendant calculates the amount in controversy with respect to this claim as follows: 54,458 x $15.00 x 1 = $816,870.  Id.

The Court cannot credit Defendant's calculation.  Defendant's assumption that putative class members missed one meal break during each of the 54,458 workweeks within the class period does not have a factual basis in the FAC.  Plaintiff does not allege any facts quantifying the meal periods Defendant failed to provide.  Further, Vocke's declaration is silent on the issue of missed meal breaks and Defendant has not otherwise proffered any concrete "summary-judgment-type" evidence supporting its assumption of one missed meal break during each of the workweeks within the class period.  The absence of concrete

---

[4] Damages are not available under the UCL; the available remedies are limited to restitution and injunctive relief.  See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1147 (2003); Smit v. Charles Schwab & Co., Inc., 2011 WL 846697 at *9 (N.D. Cal. 2011).

[5] While Defendant asserts that the current average rate of putative class members is $15.69, Vocke Decl. ¶ 9, Defendant does not use this figure to estimate the value of Plaintiff's missed meal period claim.  See Notice of Removal ¶ 19; id. at 5 n. 2.  Instead, Defendant uses Plaintiff's final rate of pay of $15.00.  Id. ¶ 19.

evidence leaves the Court to speculate about the amount in controversy.  Thus, Defendant has failed to meet its burden to establish to a legal certainty that the amount in controversy with respect to Plaintiff's claim for missed meal breaks is $816,870.

### 2.    Non-Compliant Wage Statements

Plaintiff seeks restitution for Defendant's failure to provide complete and accurate itemized wage statements under California Labor Code § 226.  See FAC ¶ 21.  If an employer knowingly and intentionally fails to provide a complete and accurate wage statement, an employee is entitled to recover the greater of all actual damages or "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)."  Cal. Lab. Code § 226(e).

Defendant contends that the amount in controversy with respect to this claim is $1,224,000.  Notice of Removal ¶ 23.  In reaching this figure, Defendant asserts that approximately 306 putative class members were employed during the relevant time period, and that putative class members were paid on a weekly basis.  See Vocke Decl. ¶¶ 8-9.  Defendant then assumes that all 306 putative class members are entitled to the maximum aggregate penalty of $4,000 (306 x 4,000 = $1,224,000).  Notice of Removal ¶ 23; Beane Decl. ¶ 2, Dkt. 3.

The Court cannot credit Defendant's calculation.  Defendant has failed to cite facts in the FAC that support its assumption that each putative class member is entitled to recover the maximum statutory penalty.  Nor has Defendant proffered any concrete evidence demonstrating to a legal certainty that 306 putative class members are entitled to the maximum aggregate penalty of $4,000.  Indeed, Vocke merely avers that 306 individuals worked during the relevant period.  Vocke Decl. ¶ 8.  However, Vocke's declaration does not provide a factual basis to conclude that all 306 individuals are entitled to the maximum penalty.  The absence of concrete evidence leaves the Court to speculate about the amount in controversy.  By assuming maximum damages without providing concrete evidence to support such an assumption, Defendant has failed to meet its burden to establish to a legal

certainty that the amount in controversy with respect to Plaintiff's claim for non-compliant wage statements is $1,224,000.

### 3.    Waiting Time Penalties

Plaintiff seeks restitution for waiting time penalties under California Labor Code § 203 based on Defendant's failure to pay earned wages in a timely manner upon termination. See FAC ¶ 21.  Section 201 requires that employers pay final wages to involuntarily terminated employees immediately upon termination, while § 202 requires employers to pay final wages to employees that have resigned within 72 hours of the end of their employment, unless advance notice is provided.  See Cal. Lab. Code §§ 201-202.  If an employer willfully fails to timely pay such wages, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(a).

Defendant contends that the amount in controversy with respect to this claim is $1,166,400.  Notice of Removal ¶ 22.  In arriving at this figure, Defendant asserts that approximately 324 putative class members have been terminated or resigned since October 31, 2008.  See Vocke Decl. ¶ 10.  Defendant then assumes a regular rate of pay of $15.00 (based on Plaintiff's final rate of pay), and that all of the employees worked 8 hours per day[6] and are entitled to 30 days wages, i.e., the maximum penalty.  Notice of Removal ¶ 22. Based on these assumptions, Defendant calculates the amount in controversy as follows: 324 x $15.00 x 8 x 30 = $1,166,400.  Id.  However, Defendant's assumption that every putative class member who was terminated or resigned during the relevant period is entitled to the maximum penalty of 30 days wages is not supported by the allegations in the FAC or concrete evidence.  Further, Defendant failed to provide evidentiary support for its assumption that each of the 324 class members worked an average of 8 hours per day.  By merely assuming the maximum penalty of 30 days wages and average hours worked,

---

[6] The Vocke declaration does not contain information regarding the average number of hours worked per day by putative class members.

1    Defendant failed to carry its burden to establish to a legal certainty that the amount in

2    controversy with respect to Plaintiff's claim for waiting time penalties is $1,166,400.

3                    **4.      Off-The-Clock Work**

4            Plaintiff seeks restitution for Defendant's failure to pay wages for regular hours

5    worked.  FAC ¶ 21.  Defendant contends that the amount in controversy with respect to this

6    claim is $816,870.  Notice of Removal ¶ 21.  In arriving at this figure, Defendant assumes

7    that all putative class members were not compensated for one hour of off-the-clock work

8    per week, even though the FAC "does not provide any details regarding the amount of off-

9    the-clock work."  Id.  Based on this assumption, Defendant calculates the amount in

10   controversy as follows: 54,458 x $15.00 x 1 = $816,870.  See id.  The Court cannot credit

11   Defendant's calculation.  Defendant has not cited any facts in the FAC or proffered any

12   concrete evidence that support its assumption that all putative class members were not

13   compensated for one hour of off-the-clock work per week.  The absence of concrete

14   evidence leaves the Court to speculate about the amount in controversy.  Thus, Defendant

15   has failed to meet its burden of demonstrating to a legal certainty that the amount in

16   controversy with respect to Plaintiff's claim for off-the-clock work is $816,870.

17           In its opposition, Defendant asserts that "[b]ased on the information requested in

18   Plaintiff's discovery requests that were served on [Defendant] prior to removal, . . .

19   Plaintiff's unpaid wages claim appears to be based at least in part on alleged unpaid time

20   spent driving the company vehicle to the first job site and from the last job site to home

21   each work day."  Def.'s Opp. at 11.  In support of this assertion, Defendant directs the Court

22   to Plaintiff's "Notice of Taking Deposition[] of Defendant Utiliquest, LLC's Person Most

23   Knowledgeable," which identifies one of the topics for the deposition as Defendant's

24   policies and practices regarding permitted use of vehicles assigned to system specialists

25   employed during the class period.  Beane Decl., Exh. A.  According to Defendant, "[a]

26   review of the amount of miles driven between home and the first job site and last job site

27   and home for each day worked by plaintiff and a random sample of five additional putative

28   class members who worked at different UtiliQuest facilities in California during the

putative class period shows that UtiliQuest's estimate of unpaid work as set forth in the Notice of Removal is in fact overly conservative, as the amount of alleged unpaid time attributable just to driving between home and the first and last job sites of the day is far more than the one hour per week that UtiliQuest used in its calculations supporting the removal." Def.'s Opp. at 11-12 (citing Vocke Decl. ¶ 4, Dkt. 17-2).  Defendant asserts that "using [the] calculated distance driven between home and first job site and from [the] last job site and home for Plaintiff and [the] 5 putative class members, and assuming a speed of 60 miles per hour for miles driven, would lead to an average of 2.42 hours of unpaid work time per week per person."  Id. at 12 (citing Beane Decl. ¶ 5, Dkt. 17-1).[7]

Although unclear, it appears that Defendant contends that the amount in controversy with respect to Plaintiff's claim for off-the-clock work is $1,976,825.40 (54,458 x $15.00 x 2.42 = $1,976,825.40).  The Court cannot credit Defendant's calculation.  Defendant assumes that Plaintiff's off-the-clock claim is based on unpaid time putative class members spent driving to and from work.  However, this assumption is not supported by the plain language in the FAC or concrete evidence.

Moreover, even assuming that Defendant is correct regarding the factual basis for this claim, Defendant has failed to proffer concrete evidence demonstrating to a legal certainty that putative class members worked an average of 2.42 hours of unpaid work per workweek.  Defendant has not shown that it employed a sound methodology in calculating the average hours of unpaid time putative class members spent traveling to and from work each workweek within the relevant period.  Indeed, there is no evidence to suggest that either Vocke or Beane is qualified to make an accurate and reliable calculation based on the random sampling of putative class members.  Further, there is no evidence demonstrating that the 6 person sample was random or that such a small sample size is sufficient to yield accurate results regarding the average time putative class members spent traveling to and from work.  Finally, Defendant has not offered any basis for assuming that putative class

---

[7] Beane is Defendant's counsel of record.

members traveled at an average speed of 60 miles per hour when driving to and from work. Given the deficiencies identified above, the Court finds that Defendant has failed to carry its burden to establish to a legal certainty the amount in controversy with respect to Plaintiff's off-the-clock claim.

### D.    PAGA Claim

Plaintiff seeks civil penalties under PAGA for Defendant's violation of various sections of the California Labor Code.  FAC ¶¶ 26-27.  PAGA penalties are $100 for each initial violation and $200 for each subsequent violation.  See Cal. Lab. Code § 2699(f)(2). The statute of limitations for PAGA penalties is one year.  Thomas v. Home Depot USA Inc., 527 F.Supp.2d 1003, 1007 (N.D. Cal. 2007).

Defendant contends that the amount in controversy with respect to this claim is $1,744,200.  Notice of Removal ¶ 24.  In reaching this figure, Defendant asserts that 306 putative class members were employed during the 57-week period covered by PAGA, i.e., November 1, 2011 to December 5, 2012.  Vocke Decl. ¶ 8.  Defendant further asserts that the FAC alleges at least four Labor Code violations per pay period (failure to provide meal breaks, failure to pay regular and overtime wages, failure to timely pay employees for all hours worked, and failure to provide accurate wage statements).  Notice of Removal ¶ 24. Defendant then assumes one initial PAGA violation for each of the 57 pay periods.  Notice of Removal ¶ 24.  Thus, according to Defendant, the amount in controversy for PAGA penalties is $1,744,200 (306 x 57 x 1 x $100 = $1,744,200).  Id.

The Court cannot credit Defendant's PAGA penalties calculation.[8]  Defendant offers no explanation for why it is appropriate to base its PAGA penalties calculation on 57 weeks as opposed to 52 weeks.  In addition, contrary to Defendant's assertion, Paragraph 27 of the FAC does not allege that putative class members suffered at least four Labor Code violations per pay period.  There are no facts in Paragraph 27 quantifying the Labor Code

---

[8] The Court notes that even if it were inclined to credit Defendant's PAGA damages calculation and to include an additional 25% for attorneys' fees and costs, the estimated amount in controversy would still fall far short of CAFA's jurisdictional minimum of $5,000,000.

violations suffered by putative class members.  Nor has Defendant cited any other portion of the FAC supporting its assertion that Plaintiff alleges at least four Labor Code violations per pay period.

Moreover, Defendant has not proffered any concrete evidence demonstrating to a legal certainty that the amount in controversy with respect to this claim is $1,744,200. While Vocke avers that "approximately 306 individuals worked as locators" from November 1, 2011 to December 5, 2012, Vocke Decl. ¶ 8, Defendant has not cited any evidence demonstrating how many pay periods each respective putative class member worked within the relevant period or the average amount of pay periods worked by putative class members during the relevant period.  Absent more information, the Court is not persuaded that Defendant's estimate of one PAGA violation for each pay period within the relevant statutory period is reasonable.  The lack of concrete evidence leaves the Court to speculate as to the value of this claim.[9]  Accordingly, the Court finds that Defendant has failed to carry its burden to establish to a legal certainty the amount in controversy with respect to Plaintiff's PAGA claim.

**E.    Attorneys' Fees and Costs**

Plaintiff seeks an award of attorneys' fees and costs under California Labor Code § 1194(a) and 2699(g).  FAC at 8.  Defendant estimates that attorneys' fees and costs would increase the amount in controversy by at least 25%.  Notice of Removal ¶ 26.  However, because Defendant's attorneys' fee calculation is based on speculative damages calculations that are not supported by concrete evidence, Defendant's attorneys' fees and costs calculation cannot be credited.

---

[9] Defendant's PAGA penalties calculation is also insufficient because it assumes an initial pay period violation and fifty-six subsequent violations for each of the 306 putative class members that worked during the PAGA statutory period.  Courts have held that "subsequent" violations in the PAGA context means not just later in time but following notice to the employer that it is in violation of the Labor Code.  See e.g., Trang v. Turbine Engine Components Technologies Corp., 2012 WL 6618854, at *5 (C.D. Cal. 2012) (citing Amaral v. Cintas Corp. No. 2, 163 Cal.App.4th 1157, 1207-1209 (2008)).  Defendant has not cited any language in the FAC or proffered any evidence indicating that it had notice of Labor Code violations prior to or during the PAGA statutory period.

1

**F.      Summary**

2

In sum, the Court concludes that Defendant has failed to sustain its burden to

3

establish to a legal certainty that the amount in controversy exceeds $5,000,000.

4

Accordingly, CAFA provides no basis for exercising jurisdiction in this case.  Therefore,

5

Plaintiff's motion to remand is GRANTED.

6

**IV.     CONCLUSION**

7

For the reasons stated above, IT IS HEREBY ORDERED THAT:

8

1.      Plaintiff's motion to remand is GRANTED.  The instant action is

9

REMANDED to the Superior Court of California, County of San Francisco.

10

2.      Defendant's motion for a more definite statement is DENIED as MOOT.

11

3.      The Clerk shall close the file and terminate all pending matters.

12

IT IS SO ORDERED.

13

Dated: 7/26/13

SAUNDRA BROWN ARMSTRONG
United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28